1
2
3
4
5
6
7          **IN THE UNITED STATES DISTRICT COURT FOR THE**
8                **EASTERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | 1:06-CR-40 AWI |
| ) | (CVB Mag. No. P484375) |
| **Plaintiff**, ) | |
| ) | |
| **v.** ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER DENYING** |
| ) | **DEFENDANT DANIEL P.** |
| **DANIEL P. CUESTA,** ) | **CUESTA'S APPEAL OF: (1)** |
| ) | **DENIAL OF MOTION TO** |
| **Defendant** ) | **SUPPRESS; (2) DENIAL OF** |
| ) | **MOTION FOR ACQUITTAL;** |
| _____ ) | **(3) ADMISSION OF** |
| | **EVIDENCE RELATING TO** |
| | **DEFENDANT'S DRIVERS'** |
| | **LICENSE; (4) CONVICTION** |
| | **FOR VIOLATION OF CAL.** |
| | **VEH. CODE § 23224** |

        Defendant Daniel P. Cuesta ("Cuesta") was convicted on January 25, 2006 of being a minor knowingly driving a vehicle containing alcohol in violation of Cal. Veh. Code § 23224 and 36 C.F.R. § 4.2(b).  Defendant appeals his conviction, the denial of his motion to suppress statements and evidence uncovered in the search of his vehicle, denial of his Fed. R. Crim. Rule 29 motion for acquittal (which the magistrate judge had initially granted), and the admission of testimonial evidence relating to Defendant's date of birth on his drivers' license.  The Court affirms.

**FACTS**

On September 4, 2004, U.S. National Park Service officer Ranger David Walton ("Ranger Walton") responded to a report by two plainclothes National Park Service visitor use assistants, Tanner Boley ("Boley") and Tom Champion ("Champion"), that there had been a verbal altercation between two groups of minors over the theft of marijuana and a drug pipe. The visitor use assistants observed that at least one of the groups was consuming beer and that the individuals appeared to be under the age of twenty one. The visitor use assistants also observed the groups getting into their cars and preparing to leave. Ranger Walton pulled into a parking lot near Potwisha Campgrounds and stopped a white Dodge that was exiting. The visitor use assistants alerted the ranger that the vehicle in front of him was involved. That vehicle was driven by Defendant Cuesta. A second vehicle also stopped which Ranger Walton later found out was part of the same group in the first car. According to the ranger's testimony, there were eight or nine people in the stopped vehicles.

Ranger Walton approached Cuesta's vehicle, told the occupants to stay in the vehicle and called for backup. Ranger Walton told the occupants of each vehicle that he knew everything that had happened and that he wanted the occupants to be truthful with him. The ranger testified that he had a reasonable suspicion that this was the group involved in the altercation reported by Boley and Champion, but that he did not know specifically which individuals were responsible. Ranger Walton asked the occupants of Cuesta's vehicle whether they had been drinking, and whether they were 21, to which they each responded that they had been drinking that they were under 21. During this exchange, one occupant of Cuesta's vehicle, whom the ranger described as appearing very nervous, came forth and stated that he had the marijuana and the pipe and produced these to the ranger.

After backup arrived, Ranger Walton administered field sobriety tests and a portable breath test to Defendant. Defendant registered .01 blood alcohol level on the breath tester. The ranger then searched the Defendant's vehicle to look for drugs and alcohol. The ranger found a

switchblade knife in the center console, and three beers in a styrofoam cooler in the back of the vehicle.  The occupants of the vehicle were then read their *Miranda* rights, told this was their opportunity to tell their side of the story, and given the opportunity to give a written statement.

Defendant was charged by citation with being a minor knowingly driving a vehicle containing alcohol.

## PROCEDURAL HISTORY

Defendant filed a motion to suppress on January 28, 2005, arguing that the statements he gave to Ranger Walton, as well as the beer discovered in the vehicle, were obtained in violation of the Fourth Amendment and that the statements were elicited in violation of the Fifth Amendment.  The hearing on Defendant's motion was on March 17, 2005.  Defendant's motion was denied.

A court trial was held on May 12, 2005 before the magistrate judge.  Ranger Walton testified regarding the events of September 4, 2004.  At the close of the Government's case, Defendant made a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure Rule 29.  The magistrate judge initially granted the motion, but then opened up the motion to argument.  After argument, the magistrate judge reversed himself and reopened the case upon the Government's motion and over Defendant's objection.  Ranger Walton was recalled to the stand and gave further testimony.  At the close of the Government's case, Defendant renewed his Rule 29 motion, which was denied.  Defendant was found guilty of violating California Vehicle Code § 23224, knowingly driving a vehicle containing alcohol while under 21, and 36 C.F.R. § 4.2(b), which prohibits violation of state law in a national park.[1]

---

[1]36 C.F.R. § 4.2 provides:

Sec. 4.2  State law applicable.

   (a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made a part of the regulations in this part.
   (b) Violating a provision of State law is prohibited.

The magistrate judge sentenced Defendant to a $75.00 fine and a $10.00 statutory assessment on January 25, 2006.  The following appeal ensued.

## I.    DEFENDANT'S MOTION TO SUPPRESS

Defendant appeals the denial of his motion to suppress statements he made to Ranger Walton as well as the evidence found by the ranger in the vehicle he was driving.  Defendant argues that the statements and evidence are fruits of an unlawful search and seizure in violation of the Fourth and Fifth Amendments.  According to Defendant, the ranger did not have reasonable suspicion to stop the vehicle and the resulting search and seizure was unlawful or, alternatively, even if the ranger had reasonable suspicion his conduct exceeded the scope of the reasonable suspicion.  Cuesta argues that the ranger's detainment of him constituted a custodial interrogation without *Miranda* warnings and, therefore, that any statements he made should have been excluded.

### A.    Standard of Review

In reviewing denial of a motion to suppress, a district court reviews a magistrate judge's factual findings for clear error and the denial of a motion to suppress *de novo*.  *See U.S. v. Willis*, 431 F.3d 709, 713 n.3 (9th Cir. 2005).  Whether a defendant is entitled to a *Miranda* warning is an issue of law reviewed *de novo*.  *See U.S. v. Galindo-Gallegos*, 244 F.3d 728, 730 (9th Cir. 2001).  Whether a defendant is "in custody" for purposes of *Miranda* is a mixed question of law and fact reviewed *de novo*.  *See U.S. v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002).

### B.    The Initial Stop of Defendant's Vehicle

The Fourth Amendment protects individuals against unreasonable searches and seizures. *See* U.S. Constitution, Amendment IV.  The Fourth Amendment applies to the investigatory stops of vehicles.[2]  *See U.S. v. Sharpe*, 470 U.S. 675, 682 (1985).  In evaluating the reasonableness of an investigatory stop, a court examines whether the officer's action was

---

[2]The Government does not contend that Defendant was stopped for a traffic violation.

4

1   justified at its inception, and whether it was reasonably related in scope to the circumstances

2   which justified the interference in the first place.  *Id*., citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968).

3        Reasonable suspicion is required to justify an investigatory stop.  *See U.S. v. Collom,* 614

4   F.2d 624, 628 (9th Cir. 1978) ("Our circuit has consistently held that an investigatory stop short

5   of an arrest is valid if based upon a founded or reasonable suspicion that criminal activity is

6   afoot.").  Reasonable suspicion exists when an officer is aware of "specific, articulable facts

7   which, together with objective and reasonable inferences, form the basis for suspecting that the

8   particular person detained is engaged in criminal activity."  *U.S. v. Lopez-Soto,* 205 F.3d 1101,

9   1105 (9th Cir. 2000).  Reasonable suspicion requires more than an "inchoate and

10  unparticularized suspicion or [a] 'hunch.'"  *Terry*, 392 U.S. at 27.  To determine whether

11  reasonable suspicion exists, the court must consider the totality of the circumstances surrounding

12  the stop.  *U.S. v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992).  The facts are to be interpreted in the

13  light of a trained officer's experience. *U.S. v. Cortez*, 449 U.S. 411, 418 (1981).  This includes

14  the "collective knowledge of the officers involved, and the inferences reached by experienced,

15  trained officers." *Hall*, 974 F.2d at 1204, quoting *Sharpe*, 470 U.S. at 682.

16       The record indicates that Ranger Walton based his stop of the Cuesta vehicle on the

17  information relayed to him by two visitor use assistants, employees of the national park service,

18  who personally observed a group of people that included minors drinking and engaging in an

19  altercation with another group over drugs.  The visitor use assistants observed the group getting

20  into their cars.  They relayed the information to the ranger and identified the white vehicle

21  pulling out as the ranger was coming.  Ranger Walton stopped the vehicle immediately by

22  pulling in front of the white vehicle.  Under the totality of the circumstances, the ranger had

23  reasonable suspicion to stop the vehicle.[3]

24

25       [3]While Cuesta's appeal was under submission, the Ninth Circuit decided *U.S. v. Grigg*, --
    -F.3d ---, 2007 WL 2379615 (9th Cir. 2007), which held that a court reviewing the
26  reasonableness of an investigatory stop must assess, within the totality of the circumstances, the
    potential risk of public safety associated with the nature of the offense if the stop was based on
27  suspicion that the defendant committed a past misdemeanor or minor infraction.  In *Grigg*, the

28                                                    5

According to Cuesta, Ranger Walton did not have reasonable suspicion to stop his vehicle because (1) the ranger did not personally observe him engaging in any criminal activity, and (2) the information the ranger received from the visitor use assistants was insufficient because it was not particular as to him. Defendant's narrow conception of particularized reasonable suspicion is unsupported by law and unpersuasive. First, there is no requirement that the ranger must have personally observed Cuesta involved in criminal activity in order to form reasonable suspicion. Reasonable suspicion may be based on reliable reports from third parties. *See*, *e.g.*, *U.S. v. Salas*, 879 F. 2d 530, 535 (9th Cir. 1989) (citizen informant's reports of drugs and drug packaging materials located in motel room gave police officer reasonable suspicion to conduct investigative search of defendants). Furthermore, the Supreme Court has noted that "law enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that *its occupants* are involved in criminal activity." *U.S. v. Hensley*, 469 U.S. 221, 226 (1985) (emphasis added). *See also Cortez*, 449 U.S. at 421-422 (in determining whether investigatory stop was justified, test is not whether officer had probable cause that vehicle he stopped contained the particular individual criminal suspects sought, but whether, based on the whole picture, an experienced officer could reasonably surmise that the particular vehicle he stopped was engaged in criminal activity).

Second, the information the ranger received did not have to be specifically particular as to Cuesta. Defendant contends that Boley and Champion never told the ranger that they had seen

---

Ninth Circuit found that it was unreasonable to stop a defendant solely on the basis of suspicion that he had committed a past misdemeanor by playing his car stereo at excessive volume earlier in the day. *Grigg* does not affect the instant case for at least two reasons. First, although ultimately Cuesta was only cited for being a minor in possession of alcohol, a civil infraction, the ranger's stop was prompted by his investigation of a number of on-going potential felonies, including drug possession, theft, assault, and driving under the influence. Second, to the extent *Grigg* applies to this case, the Ninth Circuit recognized that "the nature of the misdemeanor offense" must be considered, "with particular attention to the potential for ongoing or repeated danger (*e.g.*, drunken and/or reckless driving), and any risk of escalation (*e.g.*, disorderly conduct, assault, domestic violence)." Here, the ranger was investigating the very crimes noted by *Griggs* as justifying an investigatory stop of a completed misdemeanor: underage drinking by individuals who got into their cars and proceeded to drive away, and disorderly conduct. Additionally, it is notable that *Grigg* held that "we decline to adopt a *per se* standard that police may not conduct a *Terry* stop to investigate a person in connection with a past completed misdemeanor simply because of the formal classification of the offense."

6

Cuesta drinking and they never identified him as one of the specific individuals involved in any criminal wrongdoing.  The Government acknowledges that when the ranger stopped the vehicle he did not know which particular individuals were involved.   However, as the Government argues, based on information relayed to him by Boley and Champion, Ranger Walton had reasonable suspicion that the individuals involved were in that vehicle.  Defendant cites *U.S. v. Robinson*, 536 F.2d 1298 (9th Cir. 1976) for the proposition that receipt by the stopping officer of a radio dispatch to stop a described vehicle without any proof of the factual foundation for the relayed message is an insufficient basis for reasonable suspicion.  *Robinson* is distinguishable.  In that case, the prosecution had failed to provide evidence at trial regarding the factual basis for the dispatcher's call to the stopping officer, at least in part because the dispatcher was not called to testify and the stopping officer had no personal knowledge of the facts sufficient to meet the "founded knowledge" standard.[4]  Furthermore, the *Robinson* court specifically distinguished a situation where the "dispatcher himself had founded suspicion, or if he had relied on information from a reliable informant who supplied him with adequate facts to establish founded suspicion, the officer could properly have delegated the stopping function."  *Robinson*, 536 F.2d at 1300.  Here, Boley and Champion supplied Ranger Walton with sufficient facts for the ranger to have reasonable suspicion that the vehicle that he stopped was involved in criminal activity.

The information Boley and Champion relayed was based on their personal observations and they identified the vehicle containing the suspects simultaneously with the ranger pulling into the parking lot.  A stopping officer is entitled to base his reasonable suspicion that criminal activity has taken place based on his observations coupled with the observations of reliable

---

[4]"Founded knowledge" is the functional equivalent of "reasonable suspicion."  *See U.S. v. Rocha-Lopez*, 5257 F.2d 476 (9th Cir. 1975) ("We conclude that there is no substantial difference between the doctrine of 'founded suspicion' used by this court, and the 'reasonable suspicion' test . . . .").

informants.[5]  *See, e.g., Salas*, 879 F.2d at 535.  Defendant's notion of individualized reasonable suspicion seems to require a stopping officer somehow to have prior knowledge allocating responsibility before the officer even conducts the initial investigation.  That is simply not what the Fourth Amendment requires.  Boley and Champion observed the group of suspects engaged in criminal activity, which included underage drinking, fighting, theft of drugs, and potentially driving under the influence, and they identified the white Dodge as it was driven by the suspects.  This information was relayed to Ranger Walton and Defendant's car was identified as the ranger pulled into the parking lot.  As the magistrate judge found, the ranger "knew that based on credible sources that the – that there was a connection between the white car, that being Mr. Cuesta's vehicle that he was driving, and the criminal activity.  That's clear."  This factual finding is not clearly erroneous.  Thus, the ranger had sufficient reasonable suspicion to stop the vehicle, even if he himself did not personally observe Defendant committing a crime.

Defendant relies on *U.S v. Jones*, 998 F.2d 883 (10th Cir. 1993) ostensibly for the proposition that eye witness statements by an informant giving a tip to a stopping officer is insufficient evidence with which to justify an investigative stop.  In that case, the police received a call from an apartment manager that one of his tenants had reported that two African-American men had pounded on the door of a neighbor's apartment and that one was holding a gun.  The tenant then came on the line and reported the men had left, driving a black Mercedes westbound, and that they were both wearing a lot of jewelry and that one was wearing an expensive purple sweater.  Based on that tip, a police officer stopped a black Mercedes approximately five minutes away that they observed was driven by an African-American man, had a woman with a young

---

[5]It is unclear from the record whether Boley and Champion were law enforcement officers or whether they were mere civilians.  For purposes of reasonable suspicion jurisprudence, officers are presumed reliable.  *U.S. v. Beusch,* 596 F.2d 871, 874 (9th Cir. 1979) (government investigatory agents are entitled to the presumption of credibility in such circumstances), citing *U.S. v. Ventresca*, 380 U.S. 102 (1965).  But given the fact that Boley and Champion were employees and that the ranger knew them and believed them to be trustworthy, even if they were merely civilians, their communication of their personal observations of alleged criminal activity could form the basis for the ranger's reasonable suspicion.  *See, e.g., Salas*, 879 F.2d at 535.

child in the passenger seat, and another African-American man as it pulled a grocery store parking lot.[6]  The Tenth Circuit reversed defendant's conviction, holding that the eyewitness statements were "very meager evidence" with which to justify the stop.  *See Jones*, 998 F.2d at 884-85.

Jones is distinguishable.  There the court noted that there were many aspects of the vehicle that suggested this was not the car for which the police were looking.  *Id*.  The police were searching for two armed men, "[y]et the car they intercepted (a) contained a six- or seven-year-old girl, (b) was not traveling from the direction of the disturbance, (c) was on a street that ... could only be reached from the disturbance by a circuitous route, and (d) promptly parked in front of a grocery store."  *Id*.  Also, the court noted that the police were acting on a tip "from an informant with whom they had no experience."  *Id*. at 886.  By contrast, the vehicle Ranger Walton stopped was pulling out of the campground parking lot where two park service employees observed the altercation between two groups of people.  Additionally, it is reasonable for the ranger to have relied on the information he received from the park service employees.  They were not "informant[s] with whom [he] had no experience."  Furthermore, Boley and Champion identified the vehicle containing the suspects as it was leaving the parking lot and relayed this to Ranger Walton who stopped the vehicle immediately after it was identified.[7]  Thus, for the reasons noted above, the Court finds that Ranger Walton had reasonable suspicion to stop Cuesta's vehicle.

**C.     Whether the Ranger's Investigation Exceeded the Scope of the Reasonable Suspicion Justifying the *Terry* Stop**

---

[6]There was also a second young child in the backseat, but this was not observed by the police prior to the stop.  *See id*. at 885.

[7]Defendant's reply brief disputes this point and states that "Contrary to the suggestion in the Government's brief, Boley and Champion never identified Mr. Cuesta or his vehicle in connection with their report of underage drinking because 'at that time no one knew the name or the identity of the driver.'"  This Court's review of the record indicates that Boley and Champion did identify the vehicle as containing the suspects, even if they did not specifically identify Defendant as the driver.

9

Defendant also argues that the ranger's actions exceeded the scope of the circumstances justifying the stop in that his detention was not sufficiently brief, minimally intrusive, or carefully tailored to the purposes underlying the investigation.

To pass constitutional muster a *Terry* stop must be justified at its inception and reasonably related in scope to the circumstances which justified the stop in the first place. *See Terry*, 392 U.S. at 20. An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, and the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicions. *See Florida v. Royer*, 460 U.S. 491, 500 (1983); *U.S. v. Washington*, 387 F.3d 1060, 1069 (9th Cir. 2004) ("A seizure premised on reasonable suspicion, such as a *Terry*-stop, is not per se unconstitutional under the Fourth Amendment, so long as it is sufficiently brief and minimally intrusive."). The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *Royer*, 460 U.S. at 500; *see also Sharpe*, 470 U.S. at 685-686 (rejecting "bright line" time rule to determine whether investigative stop violates fourth amendment).

Defendant's argument that his detention was not sufficiently brief is unconvincing. First, Defendant mischaracterizes the investigative stop as solely relating to an investigation of stolen drugs, which ignores that the ranger was also investigating underage drinking, disorderly conduct, and driving under the influence of alcohol. In assessing whether a detention is too long in duration to be justified as an investigative stop, it is appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *Sharpe*, 470 U.S. at 686, citing *Michigan v. Summers*, 452 U.S. 692, 701 n.14 (1981). Ranger Walton stopped Cuesta's vehicle after he was informed that it contained the suspects the visitor use assistants had observed drinking and engaging in disorderly conduct. After the ranger stopped Cuesta's vehicle, a second vehicle pulled up behind it and also stopped. The ranger was alone at this point

and called for backup before approaching the cars.  Ranger Walton then approached Cuesta's

vehicle, which he then discovered contained four individuals.  While the ranger awaited backup,

he went to the second vehicle, which contained an additional four to five individuals, and was

informed that the second vehicle was part of the same group as the Cuesta vehicle.  There were

approximately eight to nine people between the two cars.  When the ranger spoke with the

occupants of the Cuesta vehicle, they admitted that they had been drinking and that they were

under 21.  The ranger then asked about the marijuana and the pipe.  At that point, one of the

occupants of Cuesta's vehicle sitting near the backseat became visibly nervous and turned over

the marijuana and the pipe.  The ranger returned to the second vehicle for further questioning,

and before he returned to Cuesta's vehicle backup arrived.  He briefed the other officers and then

continued his investigation of Cuesta and required him to submit to sobriety tests.

   The ranger's conduct was reasonable under the circumstances.  Although this

investigatory stop may not have been as brief as the one in *Terry*, the ranger acted diligently in

pursing his investigation to confirm or dispel his suspicions.  Furthermore, in the course of the

investigation, he obtained incriminating statements from the occupants relating to underage

drinking, and the stolen marijuana and pipe.  The ranger's reasonable suspicion ripened into

probable cause during the course of his investigation, giving him cause to continue his

investigation.  *See*, *e.g.*, *U.S v. Greene*, 783 F.2d 1364, 1368 (9th Cir. 1986) (recognizing that

incidents occurring after an investigatory stop can cause reasonable suspicion to ripen into

probable cause to arrest); *U.S. v. Avalos-Ochoa*, 557 F.2d 1299, 1303 (9th Cir. 1977) ("Founded

suspicion may ripen into probable cause to arrest or search through the occurrence of

after-the-stop facts and incidents.").   Rather than dissipating, the ranger's reasonable suspicion

ripened into probable cause that further justified his search.

   The ranger's actions were also sufficiently related in scope to the reasons for the stop.

Defendant's characterization of the incident giving rise to the stop as solely an investigation

regarding stolen drugs is both too narrow and at odds with the record.  Defendant seems to argue

that once Ranger Walton recovered the drugs, his investigation should have ceased.  As the ranger's testimony shows, the stop was procured not just by the stolen drugs and paraphanelia, but also by the underage drinking, the fighting, and driving under the influence.  By the time the marijuana and the pipe were turned over to the officer, the occupants of the car had admitted to drinking and to being under the age of twenty one.  Defendant also argues that because he was not free to leave during the ranger's investigation, his detention was unlawful.  Defendant relies on *U.S. v. Bravo*, 295 F.3d 1002, 1011 n.8 (9th Cir. 2002) for the proposition that a *Terry* stop becomes an illegal detention ast he point at which it proceeds beyond a brief stop to the point at which a reasonable person would conclude he was not free to leave after brief questioning.  Defendant's reliance on *Bravo* is misplaced.  *Bravo* does not stand for that proposition but merely summarizes the two general approaches the Ninth Circuit has outlined to analyze investigatory stops.[8]  As outlined above, a *Terry* stop may continue beyond a brief stop and frisk if it is reasonable under the circumstances.  A seizure becomes unlawful only when it is more intrusive than necessary.  *See Ganwich v. Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003), *citing Florida v. Royer*, 460 U.S. 491, 500, 504 (1983).  Here, the ranger's investigation was no more intrusive than necessary, even if Defendant was not free to leave.

Defendant also argues that the rangers exceeded the permissible scope of a *Terry* investigative detention when they did each of the following: (1) ordered Defendant to submit to field sobriety tests; (2) required Defendant to submit to additional field sobriety tests and a breath analyzer; (3) ordered criminal-history information on five of the individuals in the automobiles, including Defendant; (4) searched Cuesta's vehicle; (5) advised the individuals of their *Miranda* rights and interrogated them by making generalized inducements to tell their side of the story.

---

[8]The *Bravo* court characterized these two positions as follows: "The first is whether a reasonable innocent person would feel free to leave after brief questioning, which is the analysis we apply. The second is whether the intrusiveness of the measures used was reasonable under the circumstances, which we did not explicitly ask, but is implicit in our analysis." *Bravo*, 295 F.3d at 1012.

1    Under the circumstances of this case, none of this is unreasonable.  As to the field sobriety tests,

2    Defendant was a minor who was driving a vehicle and admitted to drinking–it was reasonable to

3    submit him to field sobriety tests.  As to the wants-and-warrants check, under the circumstances

4    of this case, they were minimally intrusive and related to the scope of the crimes investigated.

5    As to the search, as outlined above, the ranger's reasonable suspicion ripened into probable cause

6    as his investigation ensued.  This probable cause was sufficient to allow him to search the vehicle

7    and to request written statements after advising the individuals of their *Miranda* rights.  All these

8    actions were a reasonable part of the ranger's investigation to determine the extent of the illegal

9    conduct and the involvement of the individuals in the car.[9]

10           **D.     Whether *Miranda* was Triggered During Cuesta's Detention**

11           Defendant argues that the incriminating statements he made were elicited in violation of

12    the fifth amendment because he was subjected to custodial interrogation without being given his

13    *Miranda* rights.  The Government maintains that Cuesta was not in custody, but rather subjected

14    to investigatory questioning.

15           An officer's obligation to administer Miranda warnings attaches "only where there has

16    been such a restriction on a person's freedom as to render him 'in custody.' " *Stansbury v.*

17    *California,* 511 U.S. 318, 322 (1994), citing *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977).

18    Whether an individual is in custody is "based on the totality of the circumstances" and in-custody

19    determinations are reviewed according to whether "a reasonable person in such circumstances

20    would conclude after brief questioning [that] he or she would not be free to leave."  *See U.S. v.*

21    *Hayden,* 260 F.3d 1062, 1066 (9th Cir. 2001), citing *U.S. v. Beraun-Panez*, 812 F.2d 578, 580

22    (9th Cir. 1987).  However, *Miranda* warnings are not required prior to questioning during an

23    _____

24           [9]Defendant filed a notice of supplemental authority bringing to this Court's attention *U.S.*
      *v. Mendez*, 467 F.3d 1162 (9th Cir. 2006), which held that a defendant's interrogation after he
25    was stopped for failure to display a license plate or registration tag exceeded the scope of the stop
      when he was questioned about matters unrelated to the scope of the traffic stop, to wit his gang
26    affiliation.  This opinion was withdrawn and superceded by *U.S. v. Mendez*, 476 F.3d 1077 (9th
      Cir. 2007), which affirmed the district court's finding that the officers' questioning was not
27    beyond the scope of the initial stop.

28                                                    13

investigatory stop, "even though one's freedom of action is inhibited to some degree during an investigatory detection."  *U.S. v. Collom*, 614 F.2d 624, 628 (9th Cir. 1978).

Defendant relies on the magistrate judge's factual finding at the suppression hearing that the suspects were not free to leave to argue that Cuesta was in custody for *Miranda* purposes. This is not the only relevant factor[10] in determining whether Cuesta was in custody, but rather "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest."  *See Stansbury v. California,* 511 U.S. 318, 322 (1994), quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983).  The Government contends that Cuesta's freedom of movement was retrained only to the extent necessary in conducting an investigation and that it did not rise to the degree associated with formal arrest. The Government argues that roadside questioning is not custodial interrogation, citing *U.S. v. Galindo-Gallegos*, 244 F.3d 728 (9th Cir. 2001).  In *Galindo-Gallegos*, the Ninth Circuit held that statements made by a defendant who was not free to leave during an investigatory stop should be treated as within the category of a *Terry* stop, not as custodial interrogation for *Miranda* purposes.  *Galindo-Gallegos*, 244 F.3d at 731.  There, border patrol agents had apprehended a large group of aliens running near the U.S. border.  *Id.* at 729.  The agents told the people to sit down and then asked them what country they were from and whether they had a legal right to be in the United States.  Defendant responded that he was from Mexico and had no such right.  The agents did not advise the group of their *Miranda* rights prior to this questioning. The *Galindo-Gallegos* court relied on *Berkemer v. McCarty*, 468 U.S. 420 (1984), which held that investigatory stops were not custodial interrogation for *Miranda* purposes.  The *Berkemer*

---

[10]Defendant argues that *U.S. v. Hayden*, 260 F.3d 1062 (9th Cir. 2001) delineates five factors relevant to determine whether a suspect is in custody: (1) the language used to summon the individual; (2) the extent to which the suspect is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual.  *Hayden*, 260 F.3d at 1066.  Subsequent cases have held that "[o]ther factors may also be pertinent to, and even dispositive of, the ultimate determination whether a reasonable person would have believed he could freely walk away from the interrogators; the *Beraun-Panez/Hayden* factors are simply ones that recur frequently."  *U.S. v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002).

court reasoned that investigatory stops (1) are temporary and brief, because even if guilty of an infraction most people just get a ticket and go on their way; and (2) the typical stop is public, which reduces the ability of an officer to use illegitimate means to elicit self-incriminating statements and diminishes the motorists's fear that he will be subjected to abuse if he does not cooperate.  *See Berkemer*, 468 U.S. at 437-40; *see also Galindo-Gallegos*, 244 F.3d at 731.  The *Galindo-Gallegos* court found that defendant's detention and questioning did not amount to custodial interrogation under *Miranda* because it took place in the open and in front of a large group of suspects.  *Galindo-Gallegos* is controlling in the instant case.

Defendant distinguishes his interrogation from that in *Galindo-Gallegos*, arguing that his interrogation went further in that he was stopped, questioned, subjected to sobriety tests, had a wants-and-warrants check, the vehicle he drove was searched, and only after this occurred did the rangers read him his *Miranda* rights.  Although the detention to which Cuesta was subjected may have been more involved than that in *Galindo-Gallegos*, the underlying rationale of that case still applies here.  The stop was "temporary and brief" and no longer than was necessary because the ranger had to question eight to nine individuals in two separate cars.  "Where officers apprehend a substantial number of suspects and question them in the open prior to arrest, this is ordinarily a *Terry* stop, not custodial interrogation."  *Galindo-Gallegos*, 244 F.3d at 732.  The stop was public in the sense that it took place in the parking lot of a national park and in front of a group of eight to nine suspects.  Additionally, in this case, as in *Galindo-Gallegos*, the officer "used no threats of force, unnecessary delays, exaggerated displays of authority or other coercive tactics in their questioning."  *Galindo-Gallegos*, 244 F.3d at 736 (Paez, J., concurring), quoting *U.S. v. Torres-Sanchez*, 83 F.3d 1123, 1129.  Defendant also argues that his stop was not a routine traffic stop and that *Galindo-Gallegos* and *Berkshire* are inapplicable.  *Galindo-Gallegos*, however, is not a traffic stop case and nothing in its rationale or that in *Berkshire* limits their application to traffic stops.  Thus, Defendant's *Miranda* rights were not triggered during the ranger's investigatory stop.

15

### E.   The Search of the Vehicle was Proper

Defendant also argues that the search of the closed cooler in the rear of the vehicle was a search in violation of the Fourth Amendment.  Defendant's argument is without merit.  The occupants in Cuesta's vehicle had admitted drinking alcohol and being under 21, a passenger had turned over drugs and drug paraphanelia, the ranger assistants had observed drinking and identified the vehicle as those the suspects were driving.  The rangers had probable cause to believe that there was contraband in the vehicle and therefore could search the entire vehicle, including containers within the vehicle.  *See Wyoming v. Houghton*, 526 U.S. 295, 300 (warrantless search of vehicle and containers within vehicle is reasonable if there is probable cause for the search).

According to Defendant, the Government needed to prove that the ranger had probable cause to believe the rear cargo area contained contraband or other evidence of a crime, citing *U.S. v. Bagley*, 772 F.2d 482 (9th Cir. 1985).  *Bagley* is inapposite and does not stand for the proposition that an officer must have probable cause to search the rear of a vehicle or items contained in an vehicle.   That case involved the propriety of a warrantless seizure of a parked automobile, not an automobile driven by a criminal suspect.  *See Bagely*, 772 F.2d at 491.  Furthermore, the search of the vehicle in *Bagley* was pursuant to a warrant and the court did not address whether probable cause was necessary for the search.  *See id*.  Additionally, Defendant argues that Government's probable cause to search the vehicle dissipated once the stolen pipe was recovered.  Of course, this recovery, rather than diminishing, actually strengthened the ranger's probable cause to search the vehicle and the containers within the vehicle.

Denial of the motion to suppress was proper.

## II.   MOTIONS FOR ACQUITTAL UNDER RULE 29 OF FED. R. CRIM. PROC.

Defendant claims that the magistrate judge's initial grant of his motion for acquittal under Fed. R. Crim. Proc. Rule 29 and then subsequent reconsideration and denial violates the Double

Jeopardy Clause.  Defendant also argues that the magistrate judge erred when he reopened the case without seeking a reasonable explanation for the Government's failure to present sufficient evidence in its case in chief.

After the redirect examination of Ranger Walton, the Government rested its case. Defendant, through counsel, made a Rule 29 motion for acquittal, which was immediately granted by the magistrate judge without argument.  The prosecutor, who was a law clerk, asked for clarification regarding Rule 29.  The magistrate judge then explained that it was not clear that the Government had established certain elements of the charges beyond a reasonable doubt and then had defense counsel present oral argument.  The prosecutor then inquired about recalling Ranger Walton to the stand, at which point the magistrate judge asked the prosecutor whether he was moving to reopen.  The prosecutor moved to reopen, and recalled Ranger Walton to the stand over defense counsel's objections that the prosecution had already rested.  The magistrate judge noted defense counsel's objection but allowed the prosecutor to reopen the case and introduce additional evidence.  At the conclusion of the testimony, Defendant renewed his motion for Rule 29, which the magistrate judge also denied.

### A.      Standard of Review

A trial court's decision to allow a party to reopen its case reviewed for an abuse of discretion.  *See U.S. v. McQuisten*, 795 F.2d 858, 863 (9th Cir.1986).  Whether the Double Jeopardy Clause has been violated is a matter of law reviewed *de novo*.  *U.S. v. Byrne*, 203 F.3d 671, 673.  Denial of a motion for acquittal is subject to *de novo* review.  *U.S. v. Castellanos-Garcia*, 270 F.3d 773, 775 (9th Cir. 2001).

### B.      The Magistrate Judge Had Discretion to Allow the Government to Reopen Its Case

Cuesta argues that it was an abuse of discretion for the court to reopen the case after his Rule 29 motion was granted because the Government offered no explanation for its failure to present the additional evidence in its case in chief.  According to Cuesta, the Government needed

to provide a "compelling reason" justifying the magistrate judge's decision to reopen the case. The Government has no such requirement. "The reopening of a criminal case either to present omitted evidence or to add further testimony after either of the parties has rested is within the sound discretion of the trial court." *U.S. v. Sisack*, 527 F.2d 917, 919 (9th Cir. 1976), citations omitted. *Sisack*, an analogous case, is instructive. In *Sisack*, at the close of the government's case, defense counsel moved for a judgment of acquittal because the government had produced no evidence of a federal grand jury's authority to investigate local police conduct. *Id*. The court took the motion under submission and subsequently, over defense objection, granted the government's motion to reopen the case for further direct examination of the grand jury foreman who had testified in the prosecution's case in chief. *Id*. The foreman was allowed to testify for the first time regarding the scope of the grand jury's inquiry. The Ninth Circuit affirmed, finding there was no abuse of discretion. *Id*.

The *Sisack* court considered three factors in coming to its determination: (1) undue importance to the newly-admitted testimony; (2) the timeliness of the motion; and (3) the materiality of the testimony. *Id.* at 920, citing *Eason v. U.S.*, 281 F.2d 818, 822 (9th Cir. 1960). All of these factors weigh in favor of allowing the magistrate judge to reopen the case in the case at bar. As in *Sisack*, there is little likelihood here of undue importance given to the evidence because the defense had not yet presented its case. *See id*. There is no question the motion was timely because it was made right after the Rule 29 motion was granted, which itself was granted immediately after the close of the prosecution's case. Finally, the materiality of the testimony is obvious given that it related directly to the charged criminal offense.

Defendant cites a case from another circuit court, *U.S. v. Nunez*, 432 F.3d 573 (4th Cir. 2005), for the proposition that a district court abuses its discretion in permitting the government to reopen its case to present additional evidence absent a "reasonable explanation" for its failure to introduce that evidence at trial. *Nunez* acknowledges that a "district court's decision to reopen a case to admit additional evidence is normally within its sole discretion," (citations and internal

quotation marks omitted), but cautions that "[i]n exercising this discretion, however, the district court is directed to consider several factors," including that "[t]he party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case in chief." *See Nunez,* 432 F.3d at 579. *Nunez* in turn relies on Fourth Circuit precedent, which is not binding on this Court, for that proposition. This Court is bound by Ninth Circuit law, which does not require that the government offer a "reasonable explanation" in order to move to reopen its case after it has rested its case.

The magistrate judge did not abuse his discretion in reopening the case.[11]

### C.   Whether Cuesta's Double Jeopardy Rights Were Implicated When the Motion for Acquittal Was Granted then Subsequently Denied

Cuesta also argues that the magistrate judge's granting of his Rule 29 motion constituted an acquittal and that the magistrate judge's reconsideration and reopening of the prosecution's case violated the prohibition against double jeopardy.[12]  The Government contends that double

---

[11]The Court is, however, somewhat troubled by the implication that the magistrate judge may have reopened the case, in part, to provide "an education" for the certified law clerk who was prosecuting the case:

Mr. Brown:     I'd like to recall Ranger Walton to the stand.

Ms. Leonetti:  I object. I think they have rested.

The Court:     Well, your objection is noted, but I think that in light of the fact that as enjoyable as the game may be, what we're trying to do for some of us, for some of us it's an education. That what we're trying to do is allow everyone the opportunity to present the facts as they are and get a reasonable decision on it, and especially in light of the fact that we know that Mr. Brown [the prosecutor] is continuing his education even as we speak today, that it's appropriate. So go ahead. Recall him. You're still under oath. And believe me, I have resisted the temptation to conduct the examination myself.

Defendant does not argue that this was an abuse of discretion, and this Court need not address that issue.

[12]Cuesta made two Rule 29 motions, once at the conclusion of the prosecution's case-in-chief, and then again at the end of the trial after the ranger had been recalled to the stand. Both motions were denied.

jeopardy did not attach.  The central inquiry is whether the acquittal was final or tentative and subject to reconsideration.

"[T]he most fundamental rule in the history of double jeopardy jurisprudence has been that '(a) verdict of acquittal ... could not be reviewed, on error or otherwise, without putting (a defendant) twice in jeopardy, and thereby violating the constitution." *U.S. v. Martin Linen Supply Company*, 430 U.S. 564, 571 (1977), quoting *U.S. v. Ball*, 163 U.S. 662, 671 (1896). Whether the trial is to a jury or to the bench, subjecting a defendant to postacquittal factfinding proceedings going to guilt or innocence violates the Double Jeopardy Clause. *Smalis v. Pennsylvania*, 476 U.S. 140, 145 (1986).  What constitutes an "acquittal" for double jeopardy purposes is not controlled by the form of the judge's action, but rather a court on appeal must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged. *See Martin Linen*, 430 U.S. at 571.  The grant of a Rule 29 motion by a judge can constitute an acquittal for double jeopardy purposes. *Id*.

Double jeopardy, however, does not bar a trial court from revising a ruling on a motion for acquittal when that ruling is not "a final judgment of acquittal" and there is indication that the ruling is "tentative or subject to reconsideration." *U.S. v. Byrne*, 203 F.3d 671 (9th Cir. 2000). In *Byrne*, defendant appealed the trial court's denial of his Rule 29 motion to dismiss Count 5 of a multi-count indictment.  At trial, Defendant filed his Rule 29 motion after the close of the government's case, asserting that the government had failed to prove an element of Count 5. *Byrne*, 203 F.3d at 672.  The court heard oral argument on defendant's motion and granted it. *Id*. Counsel for the government immediately asked the court for permission to file a motion for reconsideration including the trial testimony transcript of one witness. *Id*.  After some discussion, the judge agreed, stating: "I will let you do that, but I have made up my mind, unless I can be convinced otherwise." *Id.* at 674.  On the next scheduled trial date, five days later, the trial court informed the parties that it was reversing itself and denying defendant's Rule 29

motion, based on the information provided by the government.  *Id.*  On appeal, defendant argued that the district court's reconsideration and subsequent denial of his motion for acquittal violated the double jeopardy clause.

The Ninth Circuit held that double jeopardy was not violated because "it is clear from the facts ... that the district court's initial ruling on the defendant's motion for acquittal was not final."  *Byrne*, 203 F.3d at 674.  The *Byrne* court analyzed and distinguished *U.S. v. Blount*, 34 F.3d 865 (9th Cir. 1994), where the Ninth Circuit had found that a district court's ruling on a motion for acquittal was "clearly a 'determinative' ruling."  *See id*. at 673, quoting *Blount* 34 F.3d at 868.  In *Blount*, after the motion for acquittal on felony counts was made, the district court discussed its concerns about the evidence with the parties and offered the government a chance to modify its charge, which was declined.  *Blount* 34 F.3d at 868.  The court then made its ruling of acquittal and announced its decision to the jury.  *Id.*  Blount and co-defendant then presented their defense on the remaining counts.  After the defendants rested, the court adjourned.  *Id.*  The next morning, however, the court *sua sponte* reinstated the dismissed felony claims as lesser-included misdemeanors.  *Id.*  The Ninth Circuit reversed, concluding that there was "no suggestion in this case that the district court's oral grant of the motion for acquittal was tentative or subject to reconsideration."  *Id.*

*Byrne* found that the facts and circumstances surrounding the ruling in its case were distinguishable from *Blount* and indicated that the district court's grant of the motion was tentative or subject to reconsideration.  *See Byrne*, 203 F.3d at 674.  The *Byrne* court noted that the district court discussed its concerns about the evidence with the parties and then announced that she was granting the motion, immediately after which the government asked the court to reconsider, pending submission of the trial transcript.  *Byrne* emphasized that, in granting defendant's motion, the trial court "made clear, *in the same colloquy* in which she issued her ruling on the motion for acquittal, that the motion was subject to reconsideration."  *Id.* at 675. (emphasis added).  Thus, *Byrne* reaffirms that "double jeopardy does not bar a district court from

1   revising a ruling on a motion for acquittal when that ruling is tentative or rendered subject to

2   reconsideration."[13]  *Id*. at 674, citing *Blount*, 34 F.3d at 868.

3           The same reasoning is applicable to the instant case.  An examination of the facts and

4   circumstances surrounding the magistrate judge's ruling on Cuesta's Rule 29 motion indicates

5   that it was not a determinative ruling, but rather that it was a tentative ruling subject to

6   reconsideration.  Defendant moved for acquittal after the close of the Government's case.  The

7   magistrate judge granted the motion, but did not enter a signed order or enter judgment.

8   Immediately after the trial court granted the motion, the judge allowed argument by defense

9   counsel and response by the prosecutor.  Both parties participated.  This Court's review of the

10  record indicates that the magistrate judge granted Cuesta's Rule 29 motion after the Government

11  rested, but "in the same colloquy" opened up the motion to argument and granted the

12  prosecutor's motion to reopen the case.  The magistrate judge's immediate reconsideration of the

13  Rule 29 motion clearly indicates that the motion was only tentatively granted.  Thus, a review of

14  the facts and circumstances makes clear that the magistrate judge's grant of the Rule 29 motion

15  was not final.

16  _____

17          [13]The *Byrne* court approvingly cited two Second Circuit cases, *U.S. v. LoRusso*, 695 F.2d
    45 (2d Cir. 1982) and *U.S. v. Washington*, 48 F.3d 73 (2d Cir. 1995), *cert. denied*, 515 U.S. 1151

18  (1995), for the proposition that "[a]n oral grant of a motion for acquittal is no more than an
    interlocutory order which the court has the inherent power to reconsider and modify prior to the

19  entry of judgment."  *Byrne*, 203 F.3d at 674.  (citations and internal quotations omitted).
    Although the Second Circuit cases informed the *Byrne* court's decision, the Ninth Circuit

20  affirmed on narrower grounds.  *See Blount*, 203 F.3d at 674.

21          *Byrne* and *LoRusso* were recently cited approvingly by the Supreme Court in *Price v.*
    *Vincent*, 538 U.S. 634 (2003).  In that case, the issue before the Supreme Court was whether the

22  defendant met the requirements for habeas relief under 28 U.S.C. § 2254.  The Supreme Court
    found that the Michigan state supreme court's determination that the trial judge's comments on

23  defendant's motion for directed verdict was not sufficiently final to constitute a judgment of
    acquittal for double jeopardy purposes was not contrary to, or an unreasonable application of,

24  clearly established federal law.  The court found that the state supreme court's finding that the
    trial judge's comments were not sufficiently final to terminate jeopardy "was not an *objectively*

25  *unreasonable* application of clearly established law as defined by this Court.  Indeed, numerous
    other courts have refused to find double jeopardy violations under similar circumstances."  *Id*. at

26  642-43.  (emphasis original).  Cuesta's opening brief cited to the Sixth Circuit's decision in
    *Vincent v. Jones*, 292 F.3d 506 (6th Cir. 2002), which was overruled by the Supreme Court in

27  *Price v. Vincent*.

28                                                      22

1  Cuesta relies on *U.S. v. Ogles*, 440 F.3d 1095 (9th Cir. 2006) (en banc) for the

2  proposition that the government may not appeal a Rule 29 judgment of acquittal because it is a

3  genuine acquittal relating to factual guilt or innocence since it represents a ruling that the

4  evidence was legally insufficient to sustain a conviction.  Defendant correctly states the issue in

5  *Ogles* but misconstrues its applicability to this case.  *Ogles* did not involve a trial court's

6  reconsideration of a Rule 29 motion, but examined whether, post-judgment, the government

7  could appeal a Rule 29 motion.[14]  *See id*. at 1104.  *Ogles*, unlike *Byrne* and unlike the present

8  case, did not involve the reopening of the prosecution's case and there was no question about the

9  finality of the acquittal.  Furthermore, the *Ogles* court neither mentioned nor overruled the

10 precedent established in *Byrne*.  *Ogles* is not controlling in the instant case because the finality of

11 the acquittal is the issue in the case at bar.[15]

12 Cuesta also contends that *Smith v. Massachusetts*, 543 U.S. 462 (2005) supports his

13 position that the Double Jeopardy Clause forbids a trial judge from reconsidering an earlier

14 granting of a judgment for motion of acquittal.  *Smith* is inapposite.  In *Smith*, the Supreme Court

15 noted that in the case *sub judice* there was no issue about the finality of the trial court's ruling,

16 and distinguished the case at bar from situations where finality was an issue.  *See Smith*, 543 U.S.

17 at 470 ("It is important to note, at the outset, that the facts of this case gave petitioner no reason

18 to doubt the finality of the state court's ruling.  *The prosecutor did not make or reserve a motion*

19

---

20 [14]At issue in *Ogles* was whether the government could appeal a judgment of acquittal
   under Rule 29.  *See Ogles*, 440 F.3d at 1099.  In that case, the defendant made a Rule 29 motion

21 after the close of the prosecution's case, contending that the section under which he was being
   prosecuted applies only to an unlicensed firearms dealer and he was a licensed dealer.  *Id*.  The

22 government opposed the motion, arguing that a federal firearms license is location specific and
   that defendant sold firearms outside of his designated area and was therefore unlicensed.  *Id*.  The

23 trial court granted defendant's motion.  *Id*.  The government sought to appeal the district court's
   grant judgment of acquittal under Rule 29.  *Id*.  After examining Supreme Court jurisprudence

24 and Ninth Circuit precedent, the court found unequivocally that an acquittal under Rule 29 may
   not be appealed.  *See id*. at 1104.

25 [15]Similarly, Defendant's reliance on *U.S. v. Blanton*, 476 F.3d 767 (9th Cir. 2007), cited

26 in Defendant's notice of supplemental authority, is inapposite.  As in *Ogles*, in *Blanton*, the
   government sought to appeal a Rule 29 motion post-judgment; *Blanton* did not involve a midtrial

27 reconsideration of a Rule 29 motion.

28                                        23

*for reconsideration*, or seek a continuance that would allow him to provide the court with favorable authority ... *Nor did the court's ruling appear on its face to be tentative*.") (emphasis added).  Even the dissent was in agreement that double jeopardy does not bar a trial judge's reconsideration of a midtrial grant of a motion to acquit.  *See id.* at 475 (Ginsburg, J., dissent) ("Does the Double Jeopardy Clause bar the States from allowing trial judges to reconsider a midtrial grant of a motion to acquit on one or more but fewer than all counts of an indictment? The Court unanimously answers 'No.'").  *Smith* reaffirms that the finality of the trial court's grant of a motion for acquittal is a central inquiry in double jeopardy analysis and does not disturb the *Price*, *Byrne*, and *LoRusso* line of cases permitting a trial court to reconsider midtrial a Rule 29 motion.  Thus, *Smith* does not stand for the proposition that reconsideration of a midtrial motion for acquittal is barred by the Double Jeopardy Clause, but rather that reconsideration is inappropriate where the acquittal is final.

Defendant also argues that the fact that the magistrate judge reconsidered its motion "quickly" is "irrelevant" under *Smith*.  That is incorrect.  That Cuesta's motion was reconsidered immediately after the court granted it is relevant to determining the finality of the acquittal.  *See id.* at 470.

For the reasons outlined above, the magistrate judge's grant of Cuesta's Rule 29 motion was not final and properly subject to reconsideration.  The motion was promptly reconsidered "within the same colloquy" in which it was granted.  The facts and circumstances indicate that it was tentative and not final.  Thus, the prohibition against double jeopardy was not violated and there was no error.

## III.   EVIDENTIARY ISSUES RELATING TO DEFENDANT'S DRIVERS' LICENSE

Cuesta also appeals the magistrate judge's admission of testimony by Ranger Walton of Cuesta's date of birth as reflected on his driver's license.

### A.   Standard of Review

1   The selection of the applicable standard of review of the magistrate judge's evidentiary

2   rulings is contextual.  The *de novo* standard applies when issues of law predominate in the

3   court's evidentiary analysis; the abuse-of-discretion standard applies when the inquiry is

4   "essentially factual."  *U.S. v. Owens*, 789 F.2d 750, 753 (9th Cir.1986), *rev'd on other grounds*,

5   484 U.S. 554 (1988).  Whether particular evidence falls within the scope of a rule of evidence is

6   reviewed *de novo*.  *U.S. v. Lillard*, 354 F.3d 850, 853.  This Court may affirm an evidentiary

7   ruling on any ground supported by the record, regardless of whether the magistrate judge relied

8   on the same ground or reasoning this Court adopts.  *See U.S. v. Pang,* 362 F.3d 1187, 1192 (9th

9   Cir. 2004), citing *Atel Financial Corp. v. Quaker Coal Co.*, 321 F.3d 924, 926 (9th Cir. 2003)

10  (per curiam).

11  **B.      Admission of Testimony Regarding Drivers' License**

12  The magistrate judge allowed Ranger Walton to testify regarding his recollection of

13  Cuesta's date of birth as reflected on Cuesta's drivers' license.  The drivers' license itself,

14  however, was not admitted into evidence.  The Government offered the testimony as evidence of

15  Cuesta's age at the time he was cited, that is for the truth of the matter asserted.

16  At trial, Cuesta objected on a variety of grounds to the ranger's testimony, including

17  hearsay and violation of the confrontation clause.  The magistrate judge overruled the objections:

18  THE COURT: It's overruled on the basis that it is this: That the
    driver's licenses [sic] is an official record.  It's issued by the State
19  of California that we know and judicially know it's based upon the
    procedures set forth in the California Vehicle Code.  That it's
20  issued upon the application of the – of the person who's identified
    thereon.  That Mr. Cuesta carried this with him apparently.  He
21  offered it to the – to the ranger as he's required to do under statute
    to show he's authorized to drive.  That's what the official record is
22  for.  And that any confrontation clause issue is subsumed by the
    fact that under the procedure, the very information contained
23  therein, including the name, the address and the date of birth is
    supplied by the applicant and verified by DMV. . . .
24
    It's not the verification I'm worried about, because even if it's just an
25  admission by Mr. Cuesta contained in an official document, seems to me
    it's still good enough.
26

27

28                                          25

On appeal, Cuesta contends that the testimony contains multiple levels of hearsay, was improperly admitted because does not meet the requirements of the business records exception or the official records exception, and violates the best evidence rule. Cuesta also objects that the ranger lacked personal knowledge, and there was insufficient foundation for lay opinion or testimony regarding specialized knowledge. The Government defends the trial court's admission under the business records exception, which was actually rejected by the magistrate judge, but is silent as to the applicability of the official records exception. Also, for the first time on appeal, the Government argues that the ranger's testimony is admissible as a recorded recollection.

The ranger's testimony contained multiple hearsay and to be admissible each level of hearsay needs to fit under a hearsay exemption or exception. *See U.S. v. Arteaga*, 117 F.3d 388, 396 n.12 (9th Cir. 1997). The license itself and testimony regarding the license must be admissible under a hearsay exemption or exception.

### 1.      The Drivers' License

### a.      Public Records Exception

Fed. R. Evid. 803(8), the public records exception, authorizes the admission of the records of a public office or agency for "matters observed pursuant to duty imposed by law as to which matters there was a duty to report."[16]  Fed. R. Evid. 803(8)(B).   The public records exception does not require foundational testimony because these documents "are presumed trustworthy, placing the burden of establishing untrustworthiness on the opponent of the

---

[16]Fed. R. Evid. 803(8) provides:

(8) **Public records and reports**. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Subsection (B) is the most relevant to the license since a license does not relate to (A) the activities of the DMV or (C) a factual finding from an investigation.

evidence." *See U.S. v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997) (citations and internal quotations omitted); *see also* 5 Weinstein & Berger, *Weinstein's Federal Evidence*, § 803.10[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2007) ("Since the assurances of accuracy are generally greater for public records than for regular business records, the proponent is usually not required to establish their admissibility through foundational testimony.")

Defendant argues that Rule 803(8)(B) explicitly precludes the admission in criminal cases of matters observed by police officers and other law enforcement personnel. Defendant correctly recites Rule 803, but Defendant's argument that Rule 803 bars admission of the license is without merit for two reasons. Defendant conflates the testimony of the ranger with the license itself; the public records exception applies to the drivers' license and not to testimony regarding the license. Furthermore, the agency issuing drivers' licenses is not staffed by police officers or by law enforcement personnel.

Defendant also argues that it was improper for the trial court to judicially notice the drivers' license was issued pursuant to California law.[17] Defendant contends that the court took judicial notice that the statutory procedures had in fact been followed for his license. This argument is unavailing. The magistrate judge merely took judicial notice of the California statutes providing for the issuance of a drivers' license. To the extent Defendant questions whether or not the statutory procedures were followed in this case, public records are presumed trustworthy unless the party opposing their introduction establishes such records are untrustworthy. *See Loyola-Dominguez*, 125 F.3d at 1318. Defendant has offered no reasons why Cuesta's license is untrustworthy. The drivers' license is admissible as an official record.

Cuesta further argues that the license should not be admitted because the Government offered no evidence demonstrating the license was issued by someone with first-hand knowledge.

---

[17]A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

27

1   Cuesta argues that *U.S. v. Yin*, 935 F.2d 990, 999 (9th Cir. 1991) requires such a showing.  This

2   Court disagrees.  Just as personal knowledge of the convictions underlying a rap sheet would

3   reside with the convicting court, personal knowledge of Cuesta's drivers' license would be held

4   by the California Department of Motor Vehicles ("DMV"), the issuing agency.  *Cf. U.S. v.*

5   *Perlmuter*, 693 F.2d 1290, 1296 (9th Cir. 1982) (Ferguson, J., concurring) ("Rap sheets are not

6   based on first-hand knowledge of the matters being recorded; only the court where the conviction

7   occurred has such knowledge.").  The DMV has personal knowledge based on Cuesta's

8   application and its own verification procedures.  The trial court's judicial notice of California

9   statutes pertaining to issuance of drivers' licenses is sufficient for the foundational showing of

10  personal knowledge in that the statutes evidence the DMV's first-hand knowledge of the

11  information reflected in the licenses it issues pursuant its ministerial activities.  In fact, much of

12  that information is provided by the applicant himself.  *See, e.g.*, Cal. Veh. Code § 12800 (listing

13  requirements for application for drivers' license, including "true full name, *age*, sex, mailing

14  address, residence address, and social security number"); § 12800.5 (department may require

15  proof of age prior to issuance); § 12802 (providing that applications "shall be signed and verified

16  by the applicant before a person authorized to administer oaths and the applicant shall submit

17  such evidence of age as the department may require"); *see also* § 12811(a)(1)(A) ("When the

18  department determines that the applicant is lawfully entitled to a license, it *shall* issue to the

19  person a driver's license as applied for.  The license shall state the class of license for which the

20  licensee has qualified and shall contain ... the true full name, *age*, and mailing address of the

21  licensee, a brief description and ... photograph ... and space for the signature of the licensee.")

22  (emphasis added).[18]  Thus, the magistrate judge did not abuse his discretion in admitting the

23

24

25

26  ───────────────

27      [18]Information provided by Cuesta to the DMV to obtain his license would be an
    admission of a party opponent.  *See* Fed. R. Evid. 801(d)(2)(A).

28                                             28

license as a public record.[19]

### b.      Admission of Party Opponent

It is unclear whether the trial court admitted the license as an admission of a party opponent or as an adoptive admission.  The license is not admissible as an admission of a party opponent.  A statement is not hearsay if the statement is offered against a party and is the party's own statement.  *See* Fed. R. Evid. 801(d)(2)(A).  The drivers' license, however, constitutes a declaration by the DMV and not a declaration by Cuesta.  Although the information Cuesta provided to the DMV may be an admission of a party opponent, *see supra* n.18, the license itself is not.  The license may reflect admissions by Cuesta, but given the processing and verification procedures the DMV follows before it issues a license, it is unclear that the license is an admission by Cuesta.

### c.      Adoptive Admission

The drivers' license is admissible, however, as an adoptive admission.  An adoptive admission exists when a party manifests an adoption or belief in the truth of a statement made by another.  *See* Fed. R. Evid. 801(d)(2)(B).  The trial court found that Cuesta turned over his license to the ranger upon request, and that Cuesta carried the license with him.  Based on this evidence, the Government argues that Cuesta manifested an adoption of the contents or belief in the truth of the license.

In *U.S. v. Ospina*, 739 F.2d 448, 451 (9th Cir. 1984) the Ninth Circuit held that writings in a defendant's possession are admissible as adoptive admissions under Fed. R. Ev. 801 where there is evidence that the defendant acted on the writings or otherwise manifested his adoption of them.  There, the trial court admitted a hotel receipt and handwriting on business cards as adoptive admissions by the defendant.  The documents were found in the possession of defendant

---

[19]Both parties briefed the business records exception under Fed. R. Evid. 803(6), although a review of the record indicates that the trial court did not rely on this exception to admit the license.  Since the trial court did not admit the license under the business records exception, and because admission as a public record was not an abuse of discretion, this Court need not decide whether the license is admissible under the business records exception.

and contained the phone number of the hotel and room number where other conspirators were staying, as well as the address of the location where cocaine was transferred.  The court reasoned that because the documents were in the possession of defendant and because defendant acted on the information written on the cards when he traveled to the address on the card to pick up the cocaine, the documents were admissible as adoptive admissions.  *See Ospina*, 739 F.2d at 451. *Ospina* was relied on by the Ninth Circuit in *U.S. v. Carrillo*, 16 F.3d 1046, 1049 (9th Cir. 1994). There, the Ninth Circuit upheld the trial court's admission of folded "tally sheet" found in defendant's possession as an adoptive admission where defendant "manifested [his] adoption of its contents or belief in its truth" by possessing the slip of paper and where there was evidence that defendant negotiated sale prices and quantities for cocaine that were consistent with the figures written on the slip of paper.  *Carrillo*, 16 F.3d at 1049-50.  The court distinguished *U.S. v. Ordonez*, 737 F.2d 793 (9th Cir. 1983), a case where a drug ledger found in defendant's apartment was held not to be an adoptive admission of the ledger's contents by defendant.  The *Carrillo* court characterized *Ordonez* as a case where there was no evidence of adoption that went beyond mere possession.  *Carrillo*, 16 F.3d at 1049.

This case is closer to *Ospina* and *Carillo*, where possession was paired with evidence that defendant acted on the contents of the writing, than it is to *Ordonez*, where the defendant merely possessed the writing.  A driver is required to carry a valid drivers' license at all times when driving a vehicle and must present the license for examination upon demand of a law enforcement official.  *See* Cal. Veh. Code § 12951.  Thus, a license is not passively carried, but is carried to evidence that a driver is authorized to drive and for identification purposes.  Cuesta carried his license with him and turned it over upon request, as he is required to do by statute. That action provides a sufficient link between the license and Cuesta's actions to allow the trial court to find that Cuesta manifested an adoption of the contents or belief in the truth of the license.  *See Carrillo*, 16 F.3d at 1049 ("There is a sufficient link between the writing and [defendant's] actions to permit the district court to find an adoption, within the meaning of

1   *Ospina*.").  Additionally, as the magistrate judge found, the license is a government document

2   issued pursuant to Cuesta's request.  Cuesta did not passively possess his license, but carried it

3   with him to evidence his authorization to drive and his identity, including name and age.[20]

4   Cuesta's license is admissible as an adoptive admission.

5                     **d.        Confrontation Clause Arguments**

6          Cuesta argues that admission of the license violates the confrontation clause under

7   *Crawford v. Washington*, 541 U.S. 36 (2004) because he was not afforded an opportunity to

8   cross-examine anyone from the DMV regarding its purported testimonial assertions.  This

9   argument is without merit.  "[P]ublic records ... are not themselves testimonial in nature and ...

10  these records do not fall within the prohibition established by the Supreme Court in *Crawford*."

11  *U.S. v. Weiland,* 420 F.3d 1062, 1077 (9th Cir. 2005), citing *Crawford*, 541 U.S. at 56.  To the

12  extent Cuesta challenges Ranger Walton's testimony regarding the license, which is examined in

13  the following section, testimony admissible as a recorded recollection does not violate the

14  confrontation clause.  *See U.S. v. Marshall,* 532 F.2d 1279, 1285 -1286 (9th Cir. 1976)

15  (application of recorded recollection doctrine does not involve any deprivation of the right of

16  confrontation as the Sixth Amendment has been interpreted and construed); *U.S. v. Owens*, 484

17  U.S. 554, 558-560 (1988) (no confrontation issue caused by present lack of memory).

18  Additionally, Defendant had an opportunity to and did in fact cross-examine the ranger.

19                  **2.        Testimony Regarding the Drivers' License**

20         The testimony regarding Defendant's drivers' license offered by the ranger is admissible

21  as a recorded recollection and does not violate the best evidence rule.

22                        **a.        Recorded Recollection**

23  ────────────────

24         [20]The Government also argues that Cuesta did not specifically disavow the information
     contained on his license when he turned it over and that this constituted an adoptive admission

25  that he was under 21.  This argument is unpersuasive.  Cuesta's silence when he turned over his
     license is not an admission that he was under 21 because all drivers are required to turn over their

26  license upon request by a law enforcement official, not just those under 21.  Cuesta would have
     performed the same act if he were over 21.  Cuesta's act is more correctly understood as an

27  adoptive admission of the license.

28                                          31

The Government argues that it was not error to admit the ranger's testimony regarding the date of birth on Cuesta's license because it was proper under Fed. R. Evid. 803(5) as a recorded recollection.[21]   Rule 803(5) allows a memorandum or record of an event to be read into evidence where (1) the witness once had knowledge about the matters in the document, (2) the witness now has insufficient recollection to testify fully and accurately, and (3) the record was made or adopted by the witness at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly.   *U.S. v. Collicott*, 92 F.3d 973, 984 (9th Cir. 1996); Fed. R. Evid. 803(5).   According to the Government, it was proper for the ranger to use the citation he issued on the date of the incident to refresh his recollection of the date of birth on Cuesta's license.   This Court agrees.   There is sufficient foundation on the record to show that the ranger had first-hand knowledge the date of birth reflected on Cuesta's license, which the ranger transcribed on to the citation he issued; the ranger had an insufficient recollection at trial to testify fully and accurately without reviewing the citation; and the citation was created by the ranger when the matter was fresh in his mind, that is immediately after he verified its authenticity, and there is sufficient evidence on the record that the citation accurately reflected his knowledge because the ranger testified to the circumstances in which he issued the citation.

Defendant makes a number of arguments why the ranger's testimony purportedly fails to meet Rule 803(5).   Defendant argues that the recorded recollection was never "read into evidence."   The purpose of this language in Rule 803(5) is to preclude admission of the document used to refresh the witness's recollection for fear that a factfinder would be unduly influenced by the document rather than the testimony.   *See U.S. v. Felix-Jerez*, 667 F.2d 1297, 1302 (9th Cir. 1982) ("The drafters precluded the receipt of recorded recollection as an exhibit of the proponent of the memorandum in order to prevent the trier of fact from being overly

---

[21]Defendant also argues that this was an argument made on appeal that was never made in or relied upon by the trial court.   Even if Defendant's contention were true, this Court may affirm an evidentiary ruling on any ground supported by the record, regardless of whether the magistrate judge relied on the same ground or reasoning this Court adopts.   *See Pang*, 362 F.3d at 1192.

impressed by the writing."), quoting *U.S. v. Judon*, 567 F.2d 1289, 1294 (5th Cir. 1978).  That is not at issue here because the citation was not introduced into evidence.  Furthermore, courts and commentators have acknowledged the difficulty of discerning whether a recorded recollection is read into evidence or testified to by the witness, but have admitted such testimony.  *See*, *e.g.*, *U.S. v. Marcantoni*, 590 F.2d 1324, 1330 n.6 (5th Cir. 1979) (testimony based on notes that met requirements of Rule 803(5) may be received, even if unclear whether witness read directly from notes or testified from recollection refreshed); *see also* Mueller & Kirkpatrick, Federal Evidence § 8:76 (3 ed. 2007) ("In practice, it is sometimes hard to know whether a witness is testifying from refreshed recollection or just repeating what he now remembers of the statement he just read or heard, in effect using it to convey the point (which is what the exception is for).") On this record it is unclear whether the recorded recollection was actually read into evidence or testified to, but even if it was the latter rather than the former this does not require that the ranger's testimony be excluded.  *See Marcantoni*, 590 F.3d at 1330.

Cuesta contends that the date of birth on the citation is "classic double hearsay" because the citation is the ranger's recorded recollection of another person's statement.  Defendant is correct that the evidence is hearsay, but each level of the hearsay is admissible under an exception to or exemption from the hearsay rule: the license is admissible as an official record or an adoptive admission; the date of birth on the citation is a recorded recollection of what was contained on the license.  Finally, Defendant also argues that the ranger created the citation, rather than the license.  This is correct but, rather than precluding, this actually permits the ranger to rely on the citation.

### b.    Best Evidence Rule

Defendant argues that the ranger's testimony violates the best evidence rule because the original document–the license–rather than testimony about the license, should have been introduced into evidence.  Cuesta also argues that testimony by the ranger was not the best evidence and that the Government should have instead introduced a certified copy of Cuesta's

33

1   DMV record or an explanation for failure to produce a certified copy.[22]  Defendant's argument is

2   unpersuasive.

3          The best evidence rule provides that the original of a writing is required to prove the

4   contents thereof.  *U.S. v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004); Fed. R. Evid. 1002.  Where

5   the rule applies, testimonial evidence of the contents of a writing is admissible if the original is

6   shown to be lost, destroyed, is unattainable, or in the possession of the opponent.  *See id*; Fed. R.

7   Evid. 1004.  Although it is unclear that the best evidence rule applies at all to the ranger's

8   testimony, there is Ninth Circuit authority that the best evidence rule applies "when a witness

9   seeks to testify about the contents of a writing ... without producing the physical item

10  itself–particularly when the witness was not privy to the events those contents describe."  *See*

11  *Bennett*, 363 F.3d at 953, citing Fed. R. Evid. 1002 Advisory Committee note.  To the extent the

12  best evidence rule applies here, however, the Government's failure to produce the license is

13  excused because it was in the possession of Defendant.  Rule 1004(3) provides that an original is

14  not required, and secondary evidence of a writing is admissible if:

15         At a time when *an original* was under the control of the party
           against whom offered, that party was put on notice, by the
16         pleadings or otherwise, that the contents would be a subject of
           proof at the hearing, and that party does not produce the original at
17         the hearing.

18         Fed. R. Evid. 1004(3) (emphasis added).

19  At trial, the Government requested that Defendant produce his license, which Defendant refused.

20  When the Government asked the trial court to compel Defendant to produce his license, the court

21  demurred, believing it had no authority to order Defendant to produce his license.[23]  Only after

22

23         [22]Notwithstanding Defendant's argument, the best evidence rule requires production of an
     original document and not, as its common name implies, the best evidence.  *See Seiler v.*
24   *Lucasfilm, Ltd.*, 808 F.2d 1316, 1318 (9th Cir. 1986).

25         [23]Under California law the magistrate judge had the authority to compel Cuesta to
     produce his license at trial.  *See* Cal. Veh. Code § 12952 ("A licensee shall display his driver's
26   license upon request of a magistrate or judge before whom he may be brought for violation of
     any traffic law.").  This Court need not reach the issue whether compelling Defendant to produce
27   his license at trial would have implicated the privilege against self-incrimination.

28                                              34

Defendant's refusal to produce the license at trial did the Government introduce the ranger's testimony regarding the license.

Defendant maintains that as a public record the license is not in the exclusive possession of Defendant, but rather in control of the department of motor vehicles. Defendant's argument is inapposite. The underlying rational of the Rule 1004(3) exception is to give the party opposing secondary evidence an opportunity to produce the original. *See* Fed. R. Evid. 1004(3) Advisory Committee note. ("A party who has an original in his control has no need for the protection of the rule if put on notice that proof of contents will be made. He can ward off secondary evidence by offering the original."). That Defendant may not have exclusive possession of the license because more than one "original" exists[24] does not mean that the Government is precluded from relying on this exception. In order for Rule 1004(3) to apply, Defendant merely has to be in control of "an original." *See* Fed. R. Evid. 1004(3). This accords with the underlying rationale for this exception to the best evidence rule, namely allowing Defendant the opportunity to ward off testimonial evidence by offering an original in its control.

Defendant also argues that he was given no notice that the contents of the license would be at issue. Again, Defendant's argument does not accord with the underlying purposes of the rule. Commentators agree that "notice at trial may be sufficient if the original is nearby." 31 Wright & Gold, Federal Practice and Procedure Evid., § 8016; *see also* 2 McCormick, Evidence § 239 (4th ed. 1992) ("if it appears at the trial itself that the adversary has the original paper in the courtroom, an immediate notice then and there is timely."). Additionally, in a criminal prosecution a document in the possession of a defendant is inaccessible to the prosecution and secondary evidence of its contents may be admitted without notice to produce the original. *Heller v. U.S.*, 104 F 2d 446, 448 (4th Cir. 1939); *Rocchia v. U.S.*, 78 F.2d 966, 970 (9th Cir. 1935) (where original document in defendant's possession, secondary evidence

---

[24]Rule 1001(3) defines an original of a writing as the writing itself and provides that "[i]f the data are stored in a computer or similar device, any printout or other output readable by sight, when shown to reflect the data accurately, is an 'original.'" *See* Fed. R. Evid. 1001(3).

admissible in the absence of a tender of better evidence by criminal defendant); *Madden v. U.S.*, 20 F.2d 289 (9th Cir. 1927) (same); *see also Haugen v. U.S.*, 153 F.2d 850 (9th Cir. 1946) (admission of secondary evidence is not error, but if error, the error is invited and defendant cannot complain).  Alternatively, to the extent notice is required, as the Government argues, Defendant was put on notice that the contents of the license would be a subject of proof at trial because his age was one element of the crime with which he was charged.[25]

Thus, the trial court did not err in admitting the ranger's testimony.[26]

## IV.   SUFFICIENCY OF THE EVIDENCE

The Government argues that there is sufficient evidence on the record to affirm the conviction.  This Court agrees.

### A.   Standard of Review

Claims of insufficient evidence are reviewed *de novo*.  *See U.S. v. Shipsey*, 363 F.3d 962, 971 n.8 (9th Cir. 2004).  There is sufficient evidence to support a conviction if, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*, quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The government is entitled to all reasonable inferences that might be drawn from the evidence.  *U.S. v. Johnson,* 804 F.2d 1078, 1083 (9th Cir. 1986), citing *Glasser v. U.S.*, 315 U.S. 60, 80 (1942).

---

[25]Defendant also argues that failure to abide by Rule 1005, which requires certified copies of public records or testimony by a custodian of records, precludes the Government from introducing testimony regarding the license.  Rule 1005 is inapplicable in the instant case because the best evidence rule does not apply or alternatively because the requirement that the original be introduced is excused since the license is in Defendant's possession.

[26]Defendant's foundational objections based on the ranger's purported lack of personal knowledge (Rule 602), improper lay opinion (Rule 701), and specialized knowledge (Rule 702) are overruled.  Contrary to Defendant's argument, the ranger did not need first-hand knowledge of Cuesta's birth to testify as to the date of birth on Cuesta's license.  As to lay opinion, there is sufficient evidence on the record qualifying the ranger to offer his opinion regarding the authenticity of the license.  Finally, the ranger was not offered as an expert based on his specialized knowledge, so Rule 702 is inapplicable.

**B.      The Evidence is Sufficient to Uphold the Conviction**

Cuesta was convicted of violating California Vehicle Code § 23224(a) which provides, in relevant part: "No person under the age of 21 years shall knowingly drive any motor vehicle carrying any alcoholic beverage, unless the person is accompanied by a parent, responsible adult relative, any other adult designated by the parent, or legal guardian for the purpose of transportation of an alcoholic beverage ...."  To prove its case, the Government must provide evidence beyond a reasonable doubt that (1) Cuesta was under the age of 21 at the time he was cited and (2) that he "knowingly" drove the vehicle carrying an alcoholic beverage.  Additionally, the parties extensively briefed whether Cuesta had constructive possession of the alcohol, but § 23224(a) does not require possession by the driver.[27]

**1.      Evidence that Defendant was Under 21**

This Court has already ruled that testimony by Ranger Walton regarding Cuesta's date of birth was properly admitted.  The Government maintains that there is also sufficient other evidence on the record that Cuesta was under 21, namely Cuesta's adoptive admission when he said nothing when other unnamed occupants of the car told the ranger that they had been drinking and that they were under 21.

"When an accusatory statement is made in the defendant's presence and hearing, and he understands and has an opportunity to deny it, the statement and his failure to deny are admissible against him."  *U.S. v. Moore,* 522 F.2d 1068, 1075 (9th Cir 1975).  When a defendant's silence is construed as an adoptive admission, "the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue."  *See id.* Advisory

_____

[27]The 1972 amendments to Cal. Veh. Code § 23224's predecessor (Cal. Veh. Code § 23123.5) make clear that the California legislature removed any requirement that the driver "possess" the alcohol by substituting the words "drive any motor vehicle carrying" for "possess, transport, or have under his control in any motor vehicle," and by substituting "driving the motor vehicle" for "possessing, transporting or has such alcoholic beverage in a motor vehicle under his control."  *See* Cal. Veh. Code § 23224 Historical and Statutory Notes.  Possession is a requirement of Cal. Veh. Code § 23224(b), which applies to passengers in a vehicle who are underage.  Subsection (b) does not apply to Cuesta because he was the driver and, more fundamentally, because he was not charged with violation of subsection (b).

Committee Notes to 1972 Proposed Rules, subsection (d)(2)(B).  According to the Government, when the ranger asked the occupants of the vehicle if they had been drinking and if they were under 21, Cuesta's silence and failure to refute the responses of the passengers was an adoptive admission because there is nothing indicating that Cuesta did not understand the question or responses.  The Government reasons that if a person were over 21 years of age, such a person would have objected.  There are a number of problems with the Government's argument.  First, the testimony cited by the Government does not indicate that there was a collective response to which Cuesta failed to object.  This Court's review of the record indicates that the ranger testified that he recalled asking all four occupants in the vehicle whether they were drinking and whether they were 21, to which each person provided an individual response.  *See, e.g.*, T/16-17, 19-20, 22-23.  Testimony regarding a collective response was stricken for lack of foundation.[28]  *See* T/27, 77.  In the absence of evidence of a collective response from the group, there is nothing to which Cuesta would have objected to for purposes of an adoptive admission analysis.

There is, however, also evidence on the record that the ranger asked the four occupants in Cuesta's vehicle whether they were 21 and whether they had been drinking; the magistrate judge relied on this evidence to convict Cuesta.  *See* T/80.  Although he did not have a recollection as to Cuesta specifically, according to the ranger every occupant told him individually that he or she was not 21 and that he or she had been drinking.  This evidence, as well as the ranger's testimony regarding Cuesta's date of birth is sufficient to prove he was under 21 at the time cited.

### 2.    Knowledge of the Contraband

Defendant argues that there is insufficient evidence that he knew there was alcohol in the vehicle because the alcohol was found in a container in the rear storage of a vehicle he did not own.  According to Defendant, the only proffered evidence that he knew the alcohol was in the

---

[28]The evidence relied upon by the Government is the ranger's response to the following question by the prosecutor on redirect examination: "[W]hen you asked questions of the group collectively, specifically the questions referring to age and drinking beer, did Mr. Cuesta refute anything?"  The ranger answered "No."  T/28.  Yet, there is no admitted testimony regarding a collective response.

vehicle is that he was the driver.  Knowledge of contraband inferred solely from the fact

defendant was driving a vehicle is insufficient.  *See U.S. v. Martinez*, 514 F.2d 334 (9th Cir.

1975).[29]  Defendant, however, takes an overly-narrow view of the evidence on record.  Unlike

*Martinez*, here there is evidence other than the fact that Cuesta was driving the vehicle which

tends to show that he had knowledge of the alcohol.[30]  Defendant was part of an underage group

of individuals drinking alcohol.  The record indicates that Cuesta admitted to the ranger that he

had been drinking.  The vehicle he was driving contained individuals who also admitted to

drinking.  Additionally, although he was not the owner of the vehicle and there were three other

passengers, Cuesta was in control of the vehicle and the alcohol was found in a cooler situated in

that vehicle.  That the alcohol was located in the back of the vehicle does not indicate that he had

no knowledge of the contraband.  A rational factfinder could find that Cuesta was more than a

mere chauffeur who had no knowledge of the alcohol in the vehicle he was driving.  Viewing the

evidence most favorably to the prosecution, the Court concludes that sufficient evidence was

presented to support Cuesta's conviction.[31]

---

[29]In *Martinez*, the Ninth Circuit reviewed a number of its per curiam cases that announced what seemed to be bright line rules regarding the inferences that can be made from the fact that a defendant drives a car.  The court viewed the cases as falling into four categories: those where the driver was the only occupant of the vehicle; those where the driver was the owner of the vehicle; those where the driver borrowed the vehicle from someone not present at arrest; and those where the driver was not in complete control of the vehicle. *Id*. at 338.  The court noted the categories overlap. *Id*.

[30]The Government cites *U.S. v. Dixon*, 460 F.2d 309 (9th Cir. 1972) for the proposition that the "simple act of driving a loaded car provides a substantial basis for a conclusion of knowledge." *Dixon* is inapposite.  In *Dixon*, as the *Martinez* court recognized, the driver was the only occupant in the vehicle. *See Dixon*, 460 F.2d 309; *see also Martinez*, 514 F.2d at 338 n.1.  There were no other occupants to whom the contraband could have belonged.  The cases relied on by *Dixon*, *U.S. v. Gonzalez*, 456 F.2d 1067 (9th Cir. 1972) and *U.S. v. Ascolani-Gonzalez*, 449 F.2d 159 (9th Cir. 1971) also involve cases where the driver was the lone occupant. *See Gonzalez*, 456 F.2d at 1068 and *Ascolani-Gonzalez*, 449 F.2d 159-160.

[31]Defendant's reliance on *U.S. v. Esquivel-Ortega*, 484 F.3d 1221 (9th Cir. 2007), cited in a notice of supplemental authority, is misplaced.  As noted above, the Government is not required to prove possession (shown through "dominion and control" over the contraband), but merely knowledge of the contraband.  Additionally, in *Esquivel-Ortega*, defendant was a passenger in the car and the court found there was no other evidence that the defendant knew of the presence of cocaine in the car.  By contrast, here Cuesta was the driver and additionally, on

**CONCLUSION AND ORDER**

For the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED that the magistrate judge's denial of Cuesta's motion to suppress is AFFIRMED; the magistrate judge's denial of the motions for acquittal is AFFIRMED; the magistrate judge's admission of testimony regarding the drivers' license was not error; and this Court finds there is sufficient evidence on the record to AFFIRM the conviction.  Cuesta's conviction is AFFIRMED.

IT IS SO ORDERED.

**Dated:    September 13, 2007           /s/ Anthony W. Ishii**
                                         UNITED STATES DISTRICT JUDGE

_____
this record, there is sufficient other evidence that he was aware of the presence of alcohol.

40